UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| DAVID LACY, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. G-10-100 |
| | § | |
| CHERYL PIERCE, *et al*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND ORDER**

David Lacy (TDCJ #1516215), an inmate in custody of the Texas Department of Criminal Justice-Correctional Institutions Division, (TDCJ-CID), has filed a complaint under 42 U.S.C. § 1983, alleging deliberate indifference to his serious medical needs. The plaintiff proceeds *pro se* and *in forma pauperis*. The defendants, Cheryl Pierce, Javier Zarate and Julia Humphrey, have filed a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. (Doc. No. 23). The plaintiff has not responded. Having carefully reviewed the pleadings, the summary judgment record and exhibits and the applicable law, the Court will grants the defendants' motion for summary judgment for the reasons stated below.

**I.     BACKGROUND**

The plaintiff was an inmate at the Stringfellow unit in October 2009. On and around that time, he alleges that the defendants ignored or disregarded his mental health issues by ignoring his requests for counseling and anti-psychotic medication. The plaintiff contends that the defendants' actions lead him to attempt suicide on October 8, 2009.

**II.    SUMMARY JUDGMENT STANDARD**

The Defendants' motion for summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure. Rule 56 mandates the entry of summary judgment, after adequate time

for discovery and upon motion, against a party who fails to make a sufficient showing of the existence of an element essential to the party's case, and on which that party will bear the burden at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party has the burden of showing that summary judgment is appropriate. *See Martco Ltd. Partnership v. Wellons*, *Inc.,* 588 F.3d 864, 871 (5th Cir. 2009) (citing *Celotex*, 477 U.S. at 323). Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c)(2); *Celotex Corp.,* 477 U.S. at 322-23.

If the moving party meets its initial burden, "[t]he nonmoving party 'must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim.'" *Peterson v. City of Fort Worth, Tex.,* 588 F.3d 838, 844 (5th Cir. 2009) (quotation omitted). The non-movant must do more than simply show that there is some "metaphysical doubt" as to the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 478 U.S. 574, 587 (1986). "A fact is material only if its resolution would affect the outcome of the action, ... and an issue is genuine only 'if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party.'" *Wiley v. State Farm Fire and Cas. Co.,* 585 F.3d 206, 210 (5th Cir. 2009).

In deciding whether a genuine and material fact issue has been created, the facts and inferences to be drawn from them must be reviewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co.,* 478 U.S. at 587-88. However, factual controversies are resolved in favor of the non-movant "only 'when both parties have submitted evidence of contradictory facts.'" *Alexander v. Eeds*, 392 F.3d 138, 142 (5th Cir. 2004). The nonmovant's

burden is not met by mere reliance on the allegations or denials in the non-movant's pleadings. *Diamond Offshore Co. v. A & B Builders, Inc.,* 302 F.3d 531, 545 n. 13 (5th Cir. 2002). Likewise, "conclusory allegations" or "unsubstantiated assertions" do not meet the non-movant's burden. *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.,* 530 F.3d 395, 399 (5th Cir. 2008). Instead, the nonmoving party must present specific facts which show "the existence of a genuine issue concerning every essential component of its case." *American Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Int'l.* 343 F.3d 401, 405 (5th Cir. 2003).

### III. QUALIFIED IMMUNITY

The defendants assert they are entitled to qualified immunity as a matter of law because the plaintiff failed to allege a constitutional violation and because the evidence shows that their actions were objectively reasonable in light of clearly established law.

Under the doctrine of qualified immunity, public officials and employees acting within the scope of their authority are shielded "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional law of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The Supreme Court has characterized the doctrine as protecting "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

To determine whether a public official is entitled to qualified immunity for an alleged constitutional violation, reviewing courts ask whether, taken in the light most favorable to the party asserting the injury, the facts alleged show that the official's conduct violated a constitutional right that was "clearly established at that time." *Pearson v. Callahan*, 555 U.S. 223, 129 S.Ct. 808, 815 (2009); *See Scott v. Harris*, 550 U.S. 372, 377 (2007). The second prong of the analysis asks whether qualified immunity is appropriate, notwithstanding an alleged

violation, because the defendant's actions were objectively reasonable "in light of clearly established law at the time of the conduct in question." *Hampton Co. Nat'l Sur., L.L.C. v. Tunica County, Miss.,* 543 F.3d 221, 225 (5th Cir. 2008). A reviewing court may consider these prongs in any sequence. *See Pearson*, 129 S.Ct. at 818.

The usual summary judgment burden of proof is altered in the case of a qualified immunity defense. *See Gates v. Texas Dep't of Protective and Regulatory Servs.,* 537 F.3d 404, 419 (5th Cir. 2008). An official need only plead his good faith, which then shifts the burden to the plaintiff, who must rebut the defense by establishing that the official's allegedly wrongful conduct violated clearly established law. *See Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005). The plaintiff bears the burden of negating the defense and cannot rest on conclusory allegations and assertions, but must demonstrate genuine issues of material fact regarding the reasonableness of the official's conduct. *See Michalik*, 422 F.3d at 262; *see also Ontiveros v. City of Rosenberg, Tex.,* 564 F.3d 379, 382 (5th Cir. 2009). In this case, the Court finds it appropriate to examine initially whether the plaintiff establishes a constitutional violation of the Eighth Amendment, which prohibits deliberate indifference to serious medical needs.

## IV.     DISCUSSION AND ANALYSIS

The Eighth Amendment prohibition against cruel and unusual punishment forbids deliberate indifference to the serious medical needs of prisoners. *Estelle v. Gamble*, 429 U.S. 97 (1976). Deliberate indifference to the serious medical needs of prisoners may violate the Eighth Amendment whether the indifference is manifested by prison doctors or by prison guards and whether it is intentionally denying or delaying access to medical care. *Id.*, *Harris v. Hegmann*, 198 F.3d 153, 159 (5th Cir. 1999). "Deliberate indifference is an extremely high standard to meet," *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001), and

requires a showing of unnecessary and wanton infliction of pain, rising "to the level of egregious intentional conduct." *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir. 1999); *Gobert v. Caldwell*, 463 F.3d 339, 351 (5th Cir. 2006).

A claim that medical personnel made an incorrect diagnosis does not state a cause of action for deliberate indifference in providing medical care. *Domino*, 239 F.3d at 756 (citing *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985)). A decision to provide additional or different treatment "is a classic example of a matter for medical judgment" rather than a basis for an Eighth Amendment claim. *Estelle*, 429 U.S. at 107. An inmate's disagreement with medical treatment does not state a claim for Eighth Amendment indifference to medical needs. *Norton v. Dimizana*, 122 F.3d 286, 292 (5th Cir. 1997). A plaintiff must allege and raise a fact issue as to whether prison officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *See Varnado v. Lynaugh*, 920 F.2d 320 (5th Cir. 1991). "Unsuccessful medical treatment, acts of negligence or medical malpractice do not constitute deliberate indifference." *Gobert v. Caldwell*, 463 F.3d 339, 347 (5th Cir. 2006). Deliberate indifference is especially difficult to show when the inmate has been provided with ongoing medical treatment. The Fifth Circuit has specifically noted that in such situations the only remaining logical possibility for liability is that the physician fiendishly and deliberately set out to injure rather than benefit the inmate. *Bass v. Sullivan*, 550 F.2d 229 (5th Cir. 1977), *cert. denied*, 434 U.S. 864 (1977). The undisputed evidence reveals that this clearly did not occur in the case at bar.

The defendants have provided the following summary judgment evidence:

1. Exhibit A    TDCJ medical records;

| | | | |
|---|---|---|---|
| 2. | Exhibit B | Relevant portions of UTMB Patient Liaison records; |
| 3. | Exhibit C | Relevant portions - UTMB medication compliance records; |
| 4. | Exhibit D | Affidavit of Defendant Cheryl Pierce; |
| 5. | Exhibit E | Affidavit of Defendant Zarate; |
| 6. | Exhibit F | Affidavit of Defendant Julia Humphrey; |
| 7. | Exhibit G | Affidavit of Defendant Shana L. Khawaja, PhD; |
| 8. | Exhibit H | Correctional managed Health Care Policy Manual; |
| 9. | Exhibit I | Relevant portion of TDCJ Disciplinary and Classification Records for the plaintiff. |

Defendant Zarate

In his complaint, the plaintiff alleges that he complained to Captain Zarate about having suicidal thoughts and that Zarate ignored his complaints and placed him in solitary confinement, where the plaintiff ultimately cut himself. In his Step One grievance, however, the plaintiff states: "On 10/8/09 I was taken to medical to see mental health per Capt. Zarate as I was asking to be placed in a single cell due to a mental illness. I was taken to Ms. Pierce's office to speak with her.....[then] I was escorted to 13-1 row and locked up for no reason. " (Doc. No. 1, p. 6). The plaintiff's claims are not supported by the evidence. The medical records, affidavit of Zarate (Doc. No. 23, Exh. E) and Step One grievance response (Doc. No. 1, p. 7) reveal that the plaintiff went to Zarate's office and complained of not receiving appropriate psychiatric medication. Zarate immediately had the plaintiff escorted to the office of Cheryl Pierce, a mental health specialist. (Doc. No. 23, Exh. E). When the plaintiff returned from Pierce's office, he refused to go back into his cell. When the plaintiff refused to offer an explanation of why he was refusing housing, Zarate had no choice but to place him in a single cell to await a

disciplinary investigation for refusing housing. Soon after his placement in the single cell, the plaintiff cut himself. Zarate was notified and immediately sought medical assistance for the plaintiff.

### Defendant Humphrey

The plaintiff has also sued Major Julia Humphrey, the duty warden who was called to the plaintiff's cell after the plaintiff's suicide attempt. In his complaint, the plaintiff alleges that Humphrey stood in the door and watched him bleed, and refused him medical attention. He also alleges that Humphrey instructed him to "cuff" himself in an intentional attempt to delay medical care. The plaintiff's allegations are not supported by the record.

In her affidavit, Humphrey states that she immediately proceeded to the plaintiff's cell after being alerted that he had cut himself. When she arrived, other medical officers and additional staff were already there. Humphrey immediately instructed the plaintiff to place his hands in the hand restraints to assure proper transfer to the infirmary. The plaintiff complied and was immediately transported to the infirmary. The plaintiff has offered no facts to rebut this evidence.

### Defendant Pierce

Finally, the plaintiff alleges that Defendant Cheryl Pierce, a mental health provider at the Stringfellow unit, was deliberately indifferent to his serious medical needs because she refused to prescribe him counseling and the psychiatric medications that he requested. The plaintiff has provided no evidence to support this claim. The grievance response to his complaints state that the plaintiff was seen by Ms. Pierce on 9/11/09, 10/5/09 and 10/8/09. Each time, the plaintiff requested psychiatric medication. Pierce explained to the plaintiff that two separate test results had been returned that were not suggestive of mental illness. Pierce offered to counsel the

plaintiff but he stated that he only wanted medication. During the visit to Pierce on 10/8/09, the plaintiff denied any hallucinations or thoughts of self/other harm. The plaintiff complained about his cellmate, but when Pierce offered to speak to the two of them to try and help resolve the conflict, the plaintiff refused, stating it would make matters worse. Pierce therefore referred the plaintiff to defendant Zarate to discuss the cellmate problem. After his meeting with Zarate and his subsequent refusal to be placed back in his cell, the plaintiff cut himself while awaiting a disciplinary investigation. The plaintiff was treated at the hospital, returned to his unit the next day and subsequently transferred to the Skyview unit for crisis management.

The response to the plaintiff's Step Two grievance states that the plaintiff had active prescriptions for Celexa, lithium carbonate, thorazine and benzotropine. The thorazine and benzotropine had been discontinued at the request of the plaintiff. The Minnesota Multiphasic Personality Inventory-2 test indicated that the plaintiff exaggerated the presence of problems and symptoms, especially those of a psychotic nature. The plaintiff was instructed to request a sick call request to the unit mental health department if his mental health condition changed since his last visit.

In her affidavit, Pierce states that she allowed the plaintiff to bring his free-world medical records to her so that she could review them, she sought a second opinion because two test results had come back invalid and not suggestive of mental illness, and she offered to provide mental health therapy in lieu of medication to the plaintiff, which he refused. All the plaintiff's past test results indicated malingering and not mental illness. Based on her personal evaluations of the plaintiff and his prior mental health evaluations, Pierce did not believe that the plaintiff displayed or demonstrated psychiatric behavior consistent with a disorder that warranted treatment with the type of medication he requested. Pierce also notes in her affidavit, and the

medical records reveal, that the plaintiff was a consistent, polysubstance abuser and that he used his alleged psychiatric state to receive psychotropic medications. (Doc. No. 23, Exh. A, pp. 120-150). The medical records also show that the plaintiff missed several follow-up appointments that were scheduled to address his psychiatric concerns.

Also included in the summary judgment evidence is the affidavit of Dr. Shana L. Khawaja, a licensed clinical psychologist with seventeen years of experience. (Doc. No. 23, Exh. G). Dr. Khawaja reviewed the plaintiff's medical record and concluded: "It is my professional opinion that Ms. Pierce took the appropriate steps addressing Offender Lacy's concerns. Although the offender reported a history of psychiatric treatment and repeatedly requested medication, he did not present with symptoms that appeared consistent or valid." *Id*. At 4. Dr. Khawaja further states that while the plaintiff was at the Skyview unit for crisis management, he was evaluated by mental health professionals who ultimately agreed with defendant Pierce's original assessment that the plaintiff did not warrant a psychiatric diagnosis and was probably seeking medication for ulterior reasons. *Id.*

For the foregoing reasons, this Court is of the opinion that the plaintiff has failed to raise a fact issue as to whether any defendant was deliberately indifferent to his serious medical needs, and the record is devoid of any facts showing such.

## IV. CONCLUSION

The plaintiff has failed to rebut the defendants' affirmative defense of qualified immunity by showing the existence of a disputed fact issue material to determining whether the defendants were deliberately indifferent to his serious medical needs. *See Pierce v. Smith*, 117 F.3d 866, 871-72 (5th Cir. 1997). The defendants' motion for summary judgment is **GRANTED** and this

action is **DISMISSED** with prejudice as frivolous and for failure to state a claim for which relief can be granted.

All pending motions are **DENIED** as moot.

**The Clerk shall provide a copy of this order by regular mail, facsimile transmission, or e-mail to: (1) the TDCJ - Office of the General Counsel, P.O. Box 13084, Austin, Texas, 78711, Fax Number (512) 936-2159; (2) the Inmate Trust Fund, P.O. Box 629, Huntsville, Texas 77342-0629, fax: 936-437-4793; and (3) the District Clerk for the Eastern District of Texas, Tyler Division, 211 West Ferguson, Tyler, Texas, 75702, Attention: Manager of the Three-Strikes List.**

SIGNED at Houston, Texas this 29th day of March, 2012.

Kenneth M. Hoyt
United States District Judge